LEXINGTON CO-OPERATIVE BANK *vs.* COMMISSIONER OF
BANKS.

COMMISSIONER OF BANKS *vs.* LEXINGTON CO-OPERATIVE
BANK & others.

Suffolk.    May 15, 1951. — July 12, 1951.

Present: QUA, C.J., WILKINS, SPALDING, &. WILLIAMS, JJ.

*Coöperative Bank. Bank and Banking. Public Officer. Equity Pleading
and Practice,* Declaratory proceeding. *Words,* "Approve," "Fail to
approve."

In connection with a proposed conversion of a coöperative bank into a
Federal savings and loan association under G. L. (Ter. Ed.) c. 170,
§ 49, as appearing in St. 1950, c. 371, § 1, the commissioner of banks
"fail[ed] to approve" within the specified period of thirty days the
form of the letter concerning the conversion to be mailed to the share-
holders with the notice of special meeting, and the directors of the
bank were at liberty to mail a letter in a form approved by them,
where it appeared that within thirty days after the directors had
submitted to the commissioner a form of letter with a written request
for approval he expressly disapproved such form, and that he did not
approve any form within that period.
The duty of the commissioner of banks under the provision of G. L.
(Ter. Ed.) c. 170, § 49, as appearing in St. 1950, c. 371, § 1, requiring
that a letter in "such form" "as . . . [he] may approve" be mailed
to the shareholders of a coöperative bank concerning a proposed
conversion thereof into a Federal savings and loan association is not
confined to mere approval or disapproval of a form of letter submitted
to him by the directors of the bank, but is a positive duty to see that
the letter is adequate either by drafting and approving a form himself
or by approving or modifying and approving a form submitted to him.
In a suit for a declaratory decree against a public officer, a declaration
that he lacked authority to take certain action was unnecessary in
the circumstances where the facts did not show beyond mere surmise
that he intended to take such action: on the record it was to be as-
sumed that he would not take improper action.

Two BILLS IN EQUITY, filed in the Supreme Judicial Court
for the county of Suffolk on March 28, 1951.

The suits were reserved and reported by *Williams, J.,* without decision.

*M. A. Shattuck, (L. L. Wadsworth, Jr., A. I. Bicknell, A. Julian, & E. L. Monahan* with him,) for Lexington Co-operative Bank and others.

*J. P. Clair & C. H. Walters,* Assistant Attorney General, *(W. E. Doherty, Jr.,* with them,) for the commissioner of banks.

WILLIAMS, J. These are two bills in equity under G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1, seeking a declaration of the respective rights and duties of the parties under G. L. (Ter. Ed.) c. 170, § 49, as appearing in St. 1950, c. 371, § 1. In the first case the plaintiff is Lexington Co-operative Bank and the defendant is the commissioner of banks. In the second case the plaintiff is the commissioner of banks and the defendants are Lexington Co-operative Bank and its officers and directors. In each case the bill alleges that an actual controversy has arisen between the parties concerning the construction of said § 49 which relates to the conversion by a State coöperative bank into a Federal savings and loan association. Each case is before us on reservation and report without decision by a single justice of this court upon the bill, the answer, and a statement of agreed facts. This statement is the same in each case and recites that it contains "all the material facts to be considered by the court." The cases involve the same questions of law and may be considered together.

Section 49, so far as material to the present controversy, provides as follows: "Any such corporation may convert itself into a federal savings and loan association, or other federal agency of a like nature, if authorized by a vote of a majority of all the shareholders of such corporation, entitled to vote, voting in person or by proxy, at a meeting especially called to consider the subject. Notice of such special meeting, containing a statement of the time, place and the purpose of the meeting shall be sent by the clerk of the corporation to each shareholder at his last address appearing upon

the records of the corporation, by mail, postage prepaid, at least thirty days before the date of the meeting. . . . There also shall be mailed with the notice of such special meeting such form of letter concerning the proposed conversion as the commissioner may approve; provided, that if the commissioner shall fail to approve the form of such a letter within thirty days after receipt by him of a written request therefor, such corporation may mail with said notice such form of letter as the board of directors may approve." It appears from the statement of agreed facts that the board of directors of the Lexington Co-operative Bank voted to seek the approval of its shareholders to its conversion into a Federal savings and loan association and on January 22, 1951, sent to the commissioner of banks a letter stating that "the board of directors . . . has voted to recommend to the shareholders that the bank be converted into a Federal savings and loan association. You are hereby requested to approve a form of letter to be sent to the shareholders. Please find enclosed herewith a suggested form of letter concerning the proposed conversion . . . . In accordance with the provisions of the statute, the board of directors . . . requests your approval of the aforesaid letter . . .."
On February 16 the commissioner replied to this letter stating that the proposed form of letter does not "properly inform" the shareholders of "all the facts"; and that "the form of letter submitted to me . . . is not approved as requested, but is rejected . . . because the proposed letter is not within the meaning or intent of the act." There followed criticism of certain statements made in the submitted letter and a suggestion for a conference. A conference was held and thereafter, more than thirty days after receipt by the commissioner of the letter of January 22, the directors approved a form of letter to be sent to the shareholders of the bank. This letter was dated March 28 and was somewhat different in form from the letter previously submitted to the commissioner. On March 27 the commissioner wrote to the directors advising them that to send the letter without submitting it to him and obtaining his ap-

proval would be a "violation of our General Laws." "The commissioner has not approved any form of letter, under G. L. (Ter. Ed.) c. 170, § 49 . . . for transmission to the bank's shareholders but has within thirty days of receipt of request therefor refused to approve and expressly rejected the form of letter submitted to him by the bank for his approval." Copies of the notice, proxy statement and letter are annexed to the statement of agreed facts.

In the first case the bank seeks a declaration that the meeting of shareholders "is and has been and will, upon the mailing of the notices, letter and proxy statement . . . and upon completion of the publication required by the statute, be legally and validly called and authorized to act upon the questions stated in . . . [the] notice." In the second case the commissioner asks that the court "declare the rights and duties of the plaintiff and the defendants under the provisions of c. 170, § 49, G. L."

The questions which are in actual controversy are whether the commissioner has failed to approve the form of letter submitted by the bank or any other form of letter "concerning the proposed conversion" and whether in the circumstances the bank will comply with the statute by mailing "such form of letter as the board of directors may approve" without obtaining the approval of the commissioner. The only form of letter submitted to the commissioner is the form enclosed with the letter dated January 22 which was submitted with a written request that it be approved. The commissioner did not approve it but expressly disapproved it. It is his contention that such express disapproval does not constitute a failure to approve and that the event, on the happening of which the directors may send a letter without his approval, has not occurred. He argues that the words of the statute, "shall fail to approve," refer only to a situation where the commissioner has taken no action and not to one where he has expressed his disapproval. Clearly there has been no approval. Whether this lack of approval is due to neglect by the commissioner to act or to an act by him signifying disapproval seems to be immaterial. The com-

missioner not having approved the form of letter submitted, it must be held that he has failed to approve it. A contrary conclusion would enable the commissioner by repeated disapprovals to prevent the sending of any letter for an indefinite period, a result not within the contemplation of the statute. Since the commissioner has failed to approve the form of letter submitted, or any "form of such a letter" within the required time, the directors of the bank may mail to the shareholders the letter which the directors have approved.

This decision does not mean that disapproval by the commissioner of a submitted form of letter need result in the mailing of a letter to the shareholders without his approval. The privilege of conversion which is granted to a coöperative bank may be exercised only after an affirmative vote by a majority of all the shareholders of the bank, voting in person or by proxy, at a meeting especially called to consider the subject. While it is not stated in the statute what the letter, which must accompany the notice of the meeting, shall contain, the Legislature obviously contemplated a letter containing information sufficient to enable the shareholders to vote intelligently on the matter to be presented. The determination of the form and contents of the letter is left to the commissioner. It is his duty to see that the shareholders receive the information to which within reasonable limits they are entitled.

The commissioner contends that he fully performs this duty by either approving or disapproving a form of letter which is submitted to him by the directors of the bank. It is apparent that if that is the extent of his duty and if his authority over the letter goes no farther, the intent of the statute to afford adequate information to shareholders may easily be frustrated. A manifestly improper letter may be submitted which the commissioner is bound to disapprove. After such disapproval, which in our opinion as heretofore stated would constitute a failure to approve, the directors may, as in the instant case, mail to the shareholders a letter which has not received the approval of the commissioner

however improper in form and content such letter may be. The shareholders would thus be deprived of that protection which the provision for approval of the letter by the commissioner is designed to afford. We think that the authority of the commissioner and his duty to the shareholders go beyond mere approval or disapproval of a submitted letter. It is true, as he contends, that the statute speaks of his approval of the form of the letter and is silent as to any right which he may have to prescribe such form, but the statute also omits any reference to the submission of a form to the commissioner by the directors, a submission which he argues should be made before he is required to "approve." The statute only says, "There also shall be mailed with the notice . . . such form of letter concerning the proposed conversion as the commissioner may approve." If "the commissioner shall fail to approve the form of such a letter within thirty days after receipt by him of a written request therefor, such corporation may mail with said notice such form of letter as the board of directors may approve."

It may be conceded that some form of letter must be in existence before there can be an approval of it but it does not follow that the commissioner may not approve a form which he himself has drafted or caused to be drafted. It is significant that the letter which, on failure of approval by the commissioner, the directors are authorized to mail is "such form of letter as . . . [they] may approve." Obviously the statute means that the word "approve" as applied to the directors shall relate to a letter which they have themselves drafted or have caused to be drafted.

We think that the statute imposes upon the commissioner the duty or burden of seeing that a proper letter is mailed to the shareholders. If a form of letter is submitted by the directors which he deems adequate, he may approve it. If it is one considered by him to be inadequate, he may amend or modify it and, as so amended or modified, then approve it. It is the policy of the Legislature as evidenced by the statute that conversion be permitted provided such conversion is authorized by the vote of shareholders who

have been fully advised of the advantages or disadvantages of the proposal. The commissioner is the agent to whom is given the power, and as we think the duty, to insure the receipt of the requisite information by the shareholders. We construe the language of the statute, "There also shall be mailed . . . such form of letter concerning the proposed conversion as the commissioner may approve," to mean that on a proposal for conversion the commissioner shall approve a form of letter to be mailed to the shareholders. "When a power is given to public officers and the public interest or individual rights call for its exercise, the language, although permissive in form, is in fact peremptory. What such officers are authorized to do for a third person the law requires shall be done." *Attleboro Trust Co.* v. *Commissioner of Corporations & Taxation*, 257 Mass. 43, 52, and cases cited.

In its brief the bank asks for a declaration that "The commissioner has no authority to circularize shareholders generally on questions involving the legality or illegality of the actions of officers or directors of the bank or to give advice or make recommendations to them in any such communication of general circularization on questions of policy relating to the affairs of the bank." Nothing appears in the statement of agreed facts indicating that the commissioner intends to circularize the shareholders, other than "On or about March 26, 1951, during the course of a regular statutory examination of the bank's affairs by the bank examiners, the examiners proceeded to take off a list of the bank's shareholders on envelopes addressed to the shareholders." Any inference which we might draw from this fact as to the intent of the commissioner would be only surmise. We may assume in the absence of further facts that as a public officer the commissioner will not take action which is not proper and lawful. As the case now stands we are not called upon to amplify what we have said concerning his rights and duties.

A decree shall be entered in each case adjudging that the commissioner has failed to approve a form of letter within thirty days after receipt by him of a written request therefor

and that the board of directors are authorized to mail to the shareholders of the bank the letter dated March 28 which they have approved.

*So ordered.*