COMMISSIONER OF BANKS *vs.* FITCHBURG CO-OPERATIVE BANK & others.

Suffolk.    October 10, 1952. — November 4, 1952.

Present: QUA, C.J., RONAN, WILKINS, & SPALDING, JJ.

*Coöperative Bank.    Bank and Banking.*

After notice of a special meeting of the shareholders of a coöperative bank to consider a proposed conversion of the bank into a Federal savings and loan association, together with a letter approved by the commissioner of banks and a proxy, had been sent to each of the shareholders in conformity to G. L. (Ter. Ed.) c. 170, § 49, as appearing in St. 1950, c. 371, § 1, there was no violation of the statute by action of the directors of the bank in sending to certain of the shareholders letters merely emphasizing the importance of their voting on the proposed conversion and urging them to return their proxies, although one of the letters also contained a statement, similar to a statement in the approved letter previously sent, that the directors were unanimously in favor of the proposed conversion.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on February 21, 1952.

The case was reserved and reported by *Williams,* J.

*John P. Clair, (James S. O'Connell & Zangwill Sher* with him,) for the plaintiff.

*Anthony Julian, (Benjamin Flaum & James H. Walsh, Jr.,* with him,) for the defendants.

SPALDING, J.    On September 24, 1951, the board of directors of the Fitchburg Co-operative Bank (hereinafter called the defendants) voted unanimously to convert the bank into a Federal savings and loan association.    Taking

the position that certain acts of the defendants (of which more will be said later) were illegal and vitiated the purported conversion, the commissioner of banks brought this bill in equity for declaratory relief under G. L. (Ter. Ed.) c. 231A. The case was heard on a statement of agreed facts by a single justice who, without decision, reported it to this court.

The Fitchburg Co-operative Bank, hereinafter called the bank, is a coöperative bank organized under the laws of this Commonwealth. On October 15, 1951, following their vote to convert the bank into a Federal savings and loan association, the defendants sent a letter to the plaintiff informing him of their action and requesting him to approve a form of letter concerning the proposed conversion to be sent to the bank's shareholders along with a notice for a special meeting to consider the question. The defendants enclosed with their letter a suggested form of letter to be sent to the shareholders. By a letter dated November 14 the plaintiff notified the defendants that he disapproved the suggested form of letter prepared by them and enclosed a form approved by him. This letter, which comprises four pages, sets forth in considerable detail the differences between a coöperative bank and a Federal savings and loan association and the advantages and disadvantages of conversion. On December 26 and 27, 1951, the defendants mailed to each shareholder a copy of the approved letter together with a notice of a special meeting to be held on February 27, 1952, to consider the proposed conversion. Enclosed with the letter and notice were a proxy and a return envelope, postage prepaid, addressed to the bank. It is agreed that all of the preliminary steps down to December 27, including the mailing of the approved letter, the notice of the special meeting and the publication thereof thereafter, and the proxy, were in accordance with the provisions of G. L. (Ter. Ed.) c. 170, § 49, as appearing in St. 1950, c. 371, § 1.

On January 18, 1952, copies of the letter set forth in the margin were sent by the defendants to the shareholders entitled to vote who at that time had not returned their

proxies.[1]  Enclosed therewith were a proxy similar to that originally sent and a return envelope, postage prepaid, addressed to the bank.  At the time that this letter was sent "the bank had not received affirmative proxies from a sufficient number of shareholders to constitute a majority of all the shareholders entitled to vote."  On February 6, 1952, the defendants sent another letter to such of the bank's shareholders as had not returned their proxies.[2]  At the time this letter was sent the bank had received affirmative proxies from a majority of all the shareholders entitled to vote.  Neither of these letters was submitted for the approval of the plaintiff and each was mailed to the shareholders without his knowledge.

Upon learning of the above mentioned letters the plaintiff on February 15 notified the defendants that in his opinion they were sent in violation of § 49 and suggested that the special meeting called for February 27 be cancelled.  In reply, the defendants took the position that the letters were proper and declined to adopt the plaintiff's suggestion to cancel the special meeting.  The plaintiff then brought the present proceedings and, pursuant to a stipulation entered into by the parties with the court's approval, the special meeting was held on the day designated in the notice.  The result of the voting (which except for 28 votes was by

---

[1] "Dear Shareholder: This is to remind you that you have not yet returned your proxy for the special meeting of the shareholders to be held on February 27, 1952, on the question of converting the Fitchburg Co-operative Bank into a Federal Savings and Loan Association.  If you do not expect to attend the meeting in person, please fill out the enclosed proxy and return it promptly in the enclosed envelope.  As a shareholder, it is important that you vote on this question.  Your Board of Directors, as stated in the letter which accompanied the notice of the special meeting, is unanimously in favor of the proposed conversion.
Very truly yours . . . [names of directors]."

[2] This letter was as follows: "Dear Shareholder: Our records show that you have not returned your proxie in connection with the proposed conversion of the Fitchburg Co-operative Bank into a Federal Savings and Loan Association.  Your Directors consider it highly desirable to have a full expression of the will of the shareholders on this important question.  Whether you are in favor or opposed to the proposed conversion, you are urged to vote.  Therefore, unless you expect to be personally present at the meeting, we sincerely hope that you will mark, date and sign the enclosed proxie and return it, as soon as possible, in the enclosed stamped envelope.
Very truly yours . . . [names of directors]."

proxy) was that a majority of all the shareholders entitled to vote favored conversion.[1]

The question for decision is whether the action of the defendants in sending to the shareholders the letters of January 18 and February 6 or either of them was in violation of § 49 and rendered the special meeting invalid. Section 49 so far as material reads: "Any such corporation may convert itself into a federal savings and loan association, or other federal agency of a like nature, if authorized by a vote of a majority of all the shareholders of such corporation, entitled to vote, voting in person or by proxy, at a meeting especially called to consider the subject. Notice of such special meeting, containing a statement of the time, place and the purpose of the meeting shall be sent by the clerk of the corporation to each shareholder at his last address appearing upon the records of the corporation, by mail, postage prepaid, at least thirty days before the date of the meeting. Notice of the meeting also shall be advertised three times in one or more newspapers published in the city or town in which the main office of the corporation is situated or if there be no such newspaper, then in one or more newspapers published in the county wherein the town is situated, the last publication to be at least one day before the meeting. There also shall be mailed with the notice of such special meeting such form of letter concerning the proposed conversion as the commissioner may approve; provided, that if the commissioner shall fail to approve the form of such a letter within thirty days after receipt by him of a written request therefor, such corporation may mail with said notice such form of letter as the board of directors may approve. A proxy used at such meeting shall not be valid unless it is in writing, signed by the shareholder, and is in such form as clearly will enable such shareholder to select and indicate his choice as to whether he favors or opposes the proposed conversion."

The portions of this statute relating to the approval of a

---

[1] Of the 4,055 shareholders entitled to vote 2,650 voted for conversion and 752 were opposed.

letter by the commissioner were before this court recently in *Lexington Co-operative Bank* v. *Commissioner of Banks*, 327 Mass. 624. It was there held that the commissioner had the duty of approving the letter to be sent to the shareholders so that they would receive "information sufficient to enable . . . [them] to vote intelligently on the matter to be presented" (page 628). The plaintiff argues that the sending of the two letters in question, which had never been approved by him, was in violation of the statute as so construed. It may well be that the defendants would have had no right, without the approval of the commissioner, to furnish the shareholders with additional information touching the proposed conversion. To permit this to be done, it could be argued, would tend to defeat the purpose of the statute, for the information might differ from that contained in the letter approved by the commissioner to such an extent as to confuse or mislead the shareholders. But, however that may be, the letters here were not of that sort. With an exception to be discussed presently, they did no more than to remind the shareholders that they had not returned their proxies and to urge that they do so. The letters did not purport to discuss the pros and cons of conversion or to suggest how the shareholders should vote. The proxies enclosed with each letter complied with statutory requirements and gave the shareholder an adequate opportunity to vote for or against the proposal. Noteworthy is the fact that § 49 provides that conversion can be accomplished only "if authorized by a vote of a majority of all the shareholders . . . entitled to vote, voting in person or by proxy." Hence if fifty per cent of the shareholders abstain from voting the legal effect of such abstention would be the same as though they had voted to oppose conversion. Having determined that conversion was desirable, the defendants were not obliged to sit idly by and let the matter go by default due to apathy or neglect on the part of the shareholders. They could take steps of the sort adopted here to prod the shareholders into voting so that the ultimate decision would represent as far as possible an

expression of their will.   Neither the letter nor the spirit of § 49 can fairly be said to forbid this.

It is true that the first letter contained the following statement: "Your Board of Directors, as stated in the letter which accompanied the notice of the special meeting, is unanimously in favor of the proposed conversion." But this did not invalidate the letter. The board had in fact so voted and a statement to this effect was contained in the letter approved by the plaintiff. At most this repetitive statement had a slightly hortatory flavor in that it served to remind the shareholders that all of the directors favored conversion.

A decree is to be entered in conformity with this opinion.

*So ordered.*